Our first case on the call of the docket today, Wednesday, January 16, 2013, is agenda number five, case number 114076, People v. Cardona. Counsel for the May it please the court. Good morning, Your Honors. Good morning, Counsel. My name is Kathleen Weck from the State of the Appellate Defender's Office, and I represent the petitioner, Mr. Hernando Cardona. Your Honors, Mr. Cardona is a 58-year-old Spanish-speaking schizophrenic who bears the label of child sex offender, even though he has never been convicted of a sex offense or of a non-sex offense that was sexually motivated. He bears this label of child sex offender because he was found not not guilty of unlawful restraint of a person under the age of 18 at a discharge hearing, and the judge decided the offense was sexually motivated. Mr. Cardona will probably never be tried for this unlawful restraint offense or for any other offense because doctors have concluded that he is unfit and will unlikely ever be found competent to stand trial. However, the judge certified Mr. Cardona as a child health hospital, agreeing with the doctor's recommendation that he did not pose a serious threat to the public. Counsel, before you get into the merits, on the jurisdictional issue, I noticed you filed a reply brief that indicated it appeared there was a lot of discussion about revestment doctrine and what have you, but it appears if your reply brief is correct, there were a number of extensions of time that wouldn't even put the jurisdiction at This is not the typical revestment case, perhaps, in which the motion to reconsider was filed without asking for an extension. In this case, the request for an extension of time to file the motion to reconsider was made before the end of the 30-day post-judgment period. And so in the reply brief, I actually clarified, although the appellate court called this revestment and I discussed how this could be revestment because it was filed so late, as a matter of fact, it really is a case in which they never actually lost jurisdiction because it was continuing without objection from the state. The defense counsel kept asking for extensions of time, but asked for that first one before the end of the 30 days. And even as this court recognized in Flowers, that is acceptable as long as the request is made before the end of the 30 days. All right. You can proceed with the Okay. Thank you. We are here today because Mr. Cardona's case presents a procedural due process problem. He has never been afforded the procedural safeguard of a trial and his guilt for the unlawful restraint has never been determined, but he has nonetheless been ordered to comply with the Sex Offender Registration Act and its host of restrictions and registration requirements, just as though he had been criminally convicted. The public sex offender database also lists him as a convicted child sex offender, but this is not true because the determination of his guilt has never been determined. Procedural due process requires that a person be given notice and a meaningful opportunity to be heard before the government takes action to deprive him of life, liberty, or property. And here Mr. Cardona lacks the ability to make himself heard because he is incompetent to stand trial. He was subject only to a discharge hearing, which as this court noted in Wade is an innocence only hearing, a procedure only to determine whether to enter a judgment of acquittal and the question of guilt is deferred until the defendant is fit to stand trial. Mr. Cardona also did not have the opportunity to make himself heard on the issue of whether the offense was sexually motivated. Now in the opening brief I discussed how procedural due process claims are looked at as a two-step process, but upon further consideration there's really three steps. First, look at the private interest that was affected. Two, consider the risk of an erroneous deprivation of that private interest through the procedures that were used. And three, weigh against these first two considerations the government's interest. So in this case, step one is the private interest is Mr. Cardona's liberty interest. SORA has impacted his freedom to live with his family, freedom to move at will in his community, freedom of association, interest in his reputation, interest in not having to give the police his personal information on an ongoing basis. It's also impacted his liberty interest in not being arrested and detained in jail or a mental health hospital if he cannot comply with the registration requirements. And the briefs discussed at length how his liberty interest has been affected and to say, as opposing counsel has, that this is a minimal impact on liberty is frankly absurd. He can no longer even live with the people who have been his caretakers in the family home because it is too close to a school. Counsel, has this question been asked and answered already in both Jonathan Seebe and Wade, that even if it is a liberty interest that the procedural safeguards are sufficient? In the case of Wade of the civil commitment, I don't know if any of you have had the chance to look at my reply brief yet, but I'm actually distinguishing the procedure that was used in Wade as being sufficient to simply commit him at the discharge hearing versus this in which there's presumably in Wade you discussed how this is an indefinite period of time for civil commitment. Here, his liberty impact in Mr. Cardona's case could be affected forever. Because he simply cannot comply with his registration requirements because he is schizophrenic, he faces this continuing cycle of being rearrested for noncompliance, found unfit to stand trial for the registration violations, released back into the community. It goes on and on and on. So when we talk about the procedure, his liberty interest being this great and the procedures that are used, then it's... The liberty interest, how do you get around the U.S. Supreme Court test in Matthews versus Eldridge? Well, this is what I'm kind of trying to say here about we have one hand the private interest in his liberty, the other hand we have the government's interest in public safety. And when we look at these procedures, was there an erroneous deprivation of his liberty interest through the procedures that were used? In this case, this man has been found not to be a threat to the public. This is, you know, if there are procedures that can be, you know, weighing the government's interest in safety versus his, there are procedures to protect the public from dangerous sex offenders. They could be civilly committed. If he had committed a predatory criminal sexual assault with a Class X sentence of up to 30 years, the law allows for such a person who is not ever found fit to trial to be civilly committed for up to the length of that sentence. In this case, we have a person who was found not a threat to the public, cannot be reasonably expected to comply, and has never been convicted. Comparing the procedures in this case, I would ask you to suggest to the Burkett versus Konetsky situation in which we talked about whether juveniles who did not have the right to a their procedural safeguards were adequate. And you decided in Konetsky that because the information was not being widely circulated and because they could also petition to get themselves terminated off the sex offender registry, that the fact that they did not have that extra procedural protection of a jury trial was adequate procedural due process in that situation. So we think about procedural due process as being flexible and addressed to the specific situation. In this situation, we're saying Mr. Cardona, unfit defendant, cannot comply, is being treated just the same as an adult sex offender who has been criminally convicted, has been able to make himself meaningfully heard at a trial, can assist in his defense. Mr. Cardona can do none of these things. Yet, he's not a threat to the public. So when we weigh his interest against public safety, Mr. Cardona has just not had a sufficiently procedurally safeguarded attempt here. Illinois is not alone. There are other states that require some to register even though they were found, or not formally convicted. How many other states are there? Counsel, I believe, talked about being about the unfit situations like this. I had come up with about four of them. She said there's others that are found not guilty by the reason of common sanity, which I said presumably means they had a trial, but I don't know what the procedures, if they were fit for the time of trial and they were not guilty of the offense when they committed it, that would be a different situation too. So we don't know all the particulars. We do know that Illinois is in the minority in requiring this. Some states, there are potentially other procedural safeguards that could be adjusted for a situation such as some states, I believe, give it up to the judge's discretion whether to order an unfit person to register. You know, there could perhaps a lesser, there could be, if you are concerned about public safety, I suppose there could be something lesser that has less of an impact on Mr. Cardona's liberty, which would also protect the public. But this is a man who is in his 50s, who has been living in this community, who is very, very crazy and disordered in his thinking, and apparently has never done anything like this before, like grab a child by the wrist outside a school. And it's a little bit ambivalent or conflicting about if, in fact, this is the man, because the little child could not identify him, whether or not what he said to this child, because according to the doctors, he can only make himself understood in Spanish. His English is minimal. We don't know what his motivation was for doing this, yet he's been held to this standard. How does the fact that SOAR registration is not deemed to be criminal punishment factor into this? That's kind of a separate issue. I kind of also noted out many states are finding it more punitive because of the extent to which it is making its reach into every aspect of a person's life and being held to these standards. For example, having to give the police your itinerary if you're going to be away from home for more than two days, and everything that's being held to them, but yes, it's been held non-punitive, but this is the liberty interest is kind of separate from a punishment issue. The procedure due process as far as your liberty interest, your liberty, your freedom to live, your freedom to move around the community, this man who has a disordered mind, found not a threat to the public, would be in violation of Sex Offender Registration Act requirements and its ancillary provisions if he was even on a public way within 500 feet of a park where people under the age of 18 were present. How on earth can this man be expected to comply with this? This is not necessarily punishment, but his liberty to move in the community has been extremely affected. So again, this case highlights the tension between liberty and public safety. Public can be protected from dangerous individuals without restricting the liberty of a schizophrenic deemed not a harm to the public's safety. And he asks this court to find that the statute subjecting him to SORA is unconstitutional as applied to him, a person unfit to stand trial, who has never been convicted of a sex offense, not considered to pose a threat to the public, and who cannot reasonably be expected to comply with SORA and its accompanying restrictions. To the extent that the VOIRA statute is a parallel provision with similar restrictions, that should also be unconstitutional as applied to him. He asks this court to reverse the Thank you very much. Thank you, Ms. Walker. May it please the court, counsel. My name is Leah Bendick from the Illinois Attorney General's Office on behalf of the people of the state of Illinois. This court should affirm the appellate court's judgment finding no procedural due process violation in requiring defendant to register as a sex offender given his finding of not not guilty at a discharge hearing for a qualifying sex offense. To touch very briefly on the jurisdictional question, given this independent basis from the reply brief, the state would agree that this court has appellate jurisdiction given the timeliness of the request for an extension for a reconsideration motion. So turning then to the merits of the issue, it is in fact a two-step process to determine whether there is a procedural due process violation. The first prong looks at whether a life, liberty, or property interest rises to the level of being constitutionally protected. And if so, then the question is whether given the extent of that infringement on that interest, the amount of process that was provided beforehand was sufficient. Now as this court has done in the past in the Konevsky case and as the United States Supreme Court has also done in Connecticut Department of Public Safety v. Doe, perhaps the easier way forward is to answer this case on the second prong and to leave the first prong open. That seems especially simple in this case in light of People v. Wade. Because after all, People v. Wade was a case in which there was direct review by this court of order by the circuit court finding the discharge hearing statute effectively unconstitutional. In reviewing both a confrontation clause challenge and a procedural due process challenge to that provision, this court found no procedural due process problem. And why that's important for this case is because since that case involved an unfit defendant who was going through the discharge hearing process, this court rightfully acknowledged that a person in that circumstance faces the potential liberty infringement of being civilly committed up to the maximum term of the sentence if that person were convicted of the charged offense. That is certainly a physical restraint on liberty that certainly crosses the threshold of being constitutionally protected. Now what defendant is asking for here in contrast is in light of the same amount of procedure, the discharge hearing, whether the liberty infringement attendant to being registered as a sex offender is appropriate. Now in defendant's opening brief he listed only three limits on his liberty. Specifically the possibility that he be prosecuted for a felony. Second, freedom of movement limitations with regard to going to public parks, schools, and bus stops. And finally that there were residency restrictions in terms of how close he could live to a school. It is true in his reply brief he has added additional limitations he cites that should perhaps be regarded as forfeited because they were not raised in the opening brief. But even if all are considered, none of them involve the physical restraint involved in civil commitment. And because Wade found in light of civil commitment for a period of years that type of liberty infringement poses no procedural due process problem when a discharge hearing is provided. That case could not exist along with this court finding for defendant as he requests here because the liberty infringement connected as the sex offender registry is certainly lesser than civil commitment for a period of years. But even if this court wanted to do an independent Matthews versus Eldridge test as my opponent has begun to argue again here, the same result follows. It is conspicuous that even now in her opening remarks she acknowledges the three steps of Matthews but she skipped the second step. The second step asks what is the risk of an erroneous deprivation and what is the value of additional procedures if there had been provided? What is noticeable today as well as in the reply brief at pages 18 and 19, defendant never clarifies exactly what procedure, what process the state failed to provide him. By not clarifying what that extra process should have been and how it would have increased the likelihood of an accurate determination, this shows how at least to some extent his argument is actually a substantive due process argument mislabeled as a procedural due process argument. He does not seem to be saying I should have received a full adult criminal trial instead of a discharge hearing. He seems to be saying because I am actually unfit it is constitutionally unacceptable to require me to register as a sex offender period. As this court has clarified in the case of Peeble versus Tenner which is located at 206 Illinois 2nd specifically pages 394 and 95, it can sometimes be complicated where that line is between substantive due process and procedural due process. And in that case this court explained that where a person is suspected to be unfit, that person experiences a procedural due process violation if he is criminally prosecuted without also receiving a fitness hearing. That is the procedure that is missing for constitutional purposes. But a person who is actually unfit receives a procedural due process violation. The defendant's argument actually seems to resemble the latter more than the former because he is saying as long as I am unfit there is nothing you can do state, there is no process you can provide me to constitutionally allow me to be registered as a sex offender period. He does not seem to be asking for a full adult criminal trial. So to the extent that that is true, those arguments are not relevant to procedural due process because a procedural due process question asks only what additional process did I fail to receive. Now this court, in light of that, should follow the example set by the United States Supreme Court. In Connecticut Public, excuse me, Connecticut Department of Public Safety versus Doe, in that case the court quite quickly dispatched of a procedural due process challenge to the Connecticut Sex Offender Registration Statute by saying look respondent, you received the process that you were due under the statute, there is no procedural due process problem in labeling you as a sex offender and so to the extent that you are actually raising a substantive due process challenge, because you have chosen not to label it or invoke substantive due process, we will not comment on the substantive due process aspects of your claim. That's found at pages 7 and 8 of that opinion. This court should follow that example and only analyze procedural due process. And so then the question really is, did he receive enough process prior to being ordered to register as a sex offender? And given people versus Wade, the answer should be yes. And indeed if this court wants to do the Matthews wing itself, in the spectrum of liberty infringements, certainly one end of the spectrum perhaps would be natural life public, where he is not physically restrained and some duties that he also must comply with. Certainly that is a much lesser liberty infringement than criminal incarceration or civil commitment. So contrasting that with the other side of the spectrum, the amount of process that's provided, a discharge hearing is very much like an adult criminal trial. The only difference is that there is no right to a jury trial and that some secondary hearsay is admissible. By taking only two of the rights away that are in a full adult criminal trial, but contrasting that with the fact that the liberty infringement alleged is actually much lesser than what can follow a full adult criminal trial, using the Matthews wing, the amount of process provided is sufficient, especially in light of the fact that defendant has not stated this XYZ is the procedure that I did not experience and that that type of procedure would have increased the accuracy here because he has skipped the second step himself and in light of Wade, this court could resolve this case easily on the second prong. But if this court would like to reach the liberty prong, the first prong, this would fail as well. Defendant continues to rely at least in part on the damage to his reputation in being labeled as a sex offender and so it is appropriate that it is the stigma plus test from Paul versus Davis that applies to determine whether the liberty interest alleged rises to the threshold level of being constitutionally protected. And in fact, defendant fails both parts of the stigma plus test. As for the stigma part, what he fails to do is allege a false statement. After all, Paul comes from a line of defamation cases. Even though he's made some comments here about the facts, his brief itself is not raising an issue about the sufficiency of the evidence that preceded his not not guilty finding, which he had raised in the appellate court. And by dropping that issue, he has dropped his argument about its accuracy. And because he does not allege, much less show, that his label of being a sex offender in terms of complying with what is required by the statute, he cannot show the falsity required to show stigma. Additionally, he cannot show the plus part of the Paul versus Davis plus test. Again, there were only three limits that he listed in his opening brief, and none of those should be found to be sufficient under the Paul test. After all, the Paul test is not simply, is there a limitation on my liberty? Is there a new duty I must comply with? It's much more narrow than that. Paul says that the court must ask whether the interest identified is one that is recognized and protected by state law that is then either changed or removed. And the two examples are very telling. Paul provides two examples of being driver's licenses and parole. To take the driver's license example, it's certainly appropriate for the state in certain circumstances to completely deny a person the right to operate a motor vehicle. It does so for children age 10, for example. And so if once it decides to allow a person having, you know, complied with certain requirements to get a driver's license, there must be process provided before that right is taken away. That dynamic is not present, though, in the types of interests that defendant identifies. There is no protected right to not be prosecuted for failure to comply with the Registration Act. There is no affirmative right to not have your movement limited, and actually this one is the easiest because there are seven circuit cases the state provides in its brief that specifically applying Paul v. Davis say a person does not have a right to access a public park. A person does not have an affirmative right to go to school property, for example. That is why public parks can be closed at dark or at 10 o'clock or whatever municipalities may choose because there is no affirmative protected right for people to have unlimited access to public parks or school property. And as for residency, the key here is not that SORA says you cannot live with your family. What the limitation is, is that you cannot live within a certain distance of a school. So if his family were to change where the residency is, it would comply with the statute. And because it's an indirect regulation, this Court should again find it does not cross that constitutional threshold. So if there are no questions, the state would ask that this Court find, number one, that under the second prong, the process provided in a discharge hearing is adequate. Number two, that if this Court were to reach the first question, the defendant can comply with neither aspect of the stigma plus test. And in any case, this Court should affirm the judgment of the appellate court. Thank you. Thank you. May it please the Court. Your Honors, procedural due process is based on fundamental fairness and seems to be missing from the state's angle here is exactly how it is fair to make a person not considered a threat to the public not to be able to live with his family in the family home in Waukegan when he is not considered a threat to the public. To make him comply with all of these steps. I believe that I have addressed the procedural due process issue as far as step two, which is asking what the, consider the erroneous deprivation, the risk of erroneous deprivation of the liberty interest by the procedures that were used. In my reply brief I have been very clear about this is different from Wade, which was saying there was enough procedural due process for a person that was civilly committed. This person is facing lifelong consequences because even though it's not considered a predatory offense with a lifetime registration requirement, this man, the ten year cycle is going to continually run. Every time he is released and found not a threat to the public, he is going to be And if that is not considered a liberty interest, I don't know what is. He cannot, basically even he can't be in the house, period, unless his family moves, which apparently co-counsel, opposing counsel thinks is a minimal intrusion on people's rights in this country. So yes it is true, there is no process that is going to give this person to make him subject to trial. But he can't have a trial because he is incompetent. He cannot make himself heard. He cannot confront the witnesses against him. He cannot assist his attorney in his defense, which is the rudimentary steps for a fair trial. So he has just not had that process at all. Ms. Weck, does the record explain if he is in a condition psychologically that he will never be fit for some type of trial hearing? Yes, they say he is never going to be unfit. For example, I'm sorry, Yes, he never will be found fit, is what the doctor said. Is that in the record? Well, it is in the record. It is in the documents which were impounded, the evaluation reports. For example, apparently he said he was born in Houston, Texas. His father died when he was born. He has three younger sisters born to the same father. This sort of thing. He said he was born in the town of Atahualpa, which is actually an Incan ruler. He is a man of morals. He is willing. He is cooperative. He attended the therapy sessions, even though they were in English. Sat there, smiles. Has never really done anything, apparently, except that if he in fact is this person, which we do not know because he never was able to testify and he's never had an actual trial to determine his guilt, if in fact he is that person that grabbed the child by the hand, because all that she could say was he had beat up black shoes. And her dad wandered around the neighborhood and said, this man has beat up black shoes. Another girl picked his photo out of a photo array. So perhaps there is sufficient evidence to find him not not guilty, but he has never had the full procedural protection of a trial. So there are no procedures that can actually compensate for this man. I discussed, you know, the unconstitutional as applied to him. Perhaps if there is a public safety, maybe the legislature can craft something that can be procedurally adequate to address the liberty interests of unfit defendants who are found not a threat to the community and are not civilly committed. The stigma plus test was discussed in my opening brief. It's also, I kind of backed away from it a little bit upon further reflection by the reply brief, thinking about how there is the freedom to associate with people. There is the freedom to travel around your community. These are actual freedoms which go well beyond the stigma plus test. And if you don't want to look at it as a stigma plus test, which many jurisdictions have looked at when they found liberty infringements for sex offenders, they do look at this first step of the harm to the reputation, which it's not completely true that it has to be false. It has to be labeled child sex offender is arguably false because he's never been tried for the underlying offense to be found that he deserves this label. So and it's also stigmatizing. The U.S. Supreme Court in these cases like VTAC versus Jones is recognizing that stigma is this badge of infamy that you can put on to a person that makes them appear different in the eyes of the community. Here when you look on the database, it says county of conviction, lake. It says child sex offender. It says what this crime was. And the public looks at this and thinks, man, this is public knowledge. This person has done this heinous thing to a child. And it's a little bit even of a, you know, kind of scary here to think this is a schizophrenic man that were he able to walk around in his community bearing this label, he could be the victim of street justice perhaps by people that say here's, you know, a child sex offender. Let's go get him. Let's do something to him. He doesn't know which end is up. This man is really, really seems really mentally disabled. But apparently has been pleasant and never has harmed anybody. So for these reasons, we're asking this court to find it as unconstitutional as applied to him and to reverse the appellate court's decision. Thank you very much. Thank you, Ms. Weck, Ms. Bendick, for your arguments today. Case number 114076, People v. Cardona, is taken under advisement as agenda number five.